The State ex rel. Tilley v. Slover.

### Division One, December 22, 1892.

1. **Officer**: STENOGRAPHER: REMOVAL FOR MISCONDUCT IN OFFICE. The failure of an official stenographer to devote his personal attention to the duties of his office leaving them to be performed wholly by deputies is a cause for his removal from office by the judge of the court, under the provisions of the statute authorizing such removal "for incompetency or any misconduct in office." (Revised Statutes, 1889, sec. 8233.)

2. **Certiorari.** *Certiorari*, it seems, is the proper proceeding to review such order of removal.

## Certiorari.

AFFIRMED.

*Huston & Parrish, Pratt, Ferry & Hagerman* and *Edwards & Davison* for relator.

(1) At common law offices are not incompatible unless their functions are such that one is subordinate to the other. *People, etc., v. Green*, 58 N. Y. 296; *Rex v. Pateman*, 2 T. R. 777; *Dyer's Case*, Dyer, 158; *Rex v. Patterson*, 4 B. & A. 15; *Rex v. Tizzard*, 9 B. & C. 421. (2) Incompatibility exists only where the nature and duties of the two offices are such as to render it improper from considerations of public policy for the incumbent to retain both. It does not necessarily arise because the incumbent for the time being places himself in a position where it is impossible to discharge the duties of both offices. *Bryan v. Catlett*, 15 Iowa 538; *Page v. Hardin*, 8 B. M. 648; *Barnard v. Hoboken*, 3 Dutcher, 412; *State v. Goff*, 15 R. I. 505; *State v. Lusk*, 48 Mo. 242. (3) There is nothing in the record in this case to show which was first made or which was first accepted. (4) The state constitution does not make any one office incompatible with another. (5) Nor is there any question of abandonment in this case. *State v. Seay*, 64 Mo. 87; *State v. Baird*, 47 Mo. 301. (6) The only remedy for the alleged violation by relator of the constitutional provision requiring him to devote his personal attention to the office is provided in Revised Statutes, 1889, secs. 7126–7. (7) The term "misconduct" as used in Revised Statutes, 1889, sec. 8233 has referrence to something done or omitted in discharging the functions of the office.

*Karnes, Holmes & Krauthoff* for respondent.

(1) *Certiorari* is not relator's proper remedy; an appeal lies in all cases where it is not expressly prohibited. *McVey v. McVey*, 51 Mo. 406; *Colville v. Judy*, 73 Mo. 651. *Certiorari* will not lie where the remedy by appeal or writ of error can be invoked. *State, etc., v. Edwards*, 104 Mo. 125; Throop on Public Officers, secs. 801, 802; 2 McQuillin's Practice, secs. 1347–8. (2) Numerous cases hold that, where the power of appointment to a given office is vested in a court, the authority is executive in its character. The particular court is *pro hac vice* the power of the state in a matter of administration, in the same sense that officers are appointed by the govenor or other officer. Upon this view it has been held that, where a court having power to appoint its own clerk enters an order removing its appointee and appointing another person to the vacancy thus decided to exist, the proceedings are not reviewable on *certiorari*, not being judicial in their character. *Taylor v. Com.*, 3 J. J. Marsh, 401; *Donahue v. Will Co.*, 100 Ill. 94; *Stern v. People*, 540. (3) When a deputy was presented whom the judge was not willing to receive, he had the right and was in duty bound to demand that the principal should attend. Throop on Public Officers, secs. 810 and 811. (4) Where the duties of each of two offices are personal the fact that both cannot be filled at the same time in such a manner as the statute creating them is found to have contemplated that they should be, makes them incompatible. *State v. Lusk*. 48 Mo. 242; 5 Bacon's Abridgment Title, Offices, K; Anderson's Law Dictionary, p. 532; *Rex v. Tizzard*, 9 B. & C. 148. (5) When Tilley accepted the Buchanan circuit appointment he at once renounced the Jackson county one and no judicial proceedings were necessary to establish the fact or to

enforce a removal from the vacated office. *State v. Draper*, 45 Mo. 355; Throop on Public Officers, secs. 30–31. (6) Relator's answer to the citation was in view of the circumstances and in legal effect a resignation of his office in Jackson county. McCrary on Elections, secs. 238–9 and 253; *Barbour v. United States*, 17 Ct. of Claims Cases, 149; *State v. Allen*, 21 Ind. 510.

BRACE, J.—This is an original proceeding by *certiorari* to review the action of the respondent as judge of division number 2 of the circuit court of Jackson county, in removing the relator from the office of stenographer of that division of said court in May, 1891, to which office he had theretofore been regularly appointed.

At the time the relator was removed he was assuming the right to exercise the functions of said office by deputy, he being absent in the circuit court of Buchanan county in the discharge of his duties there as stenographer of that court, to which office he had also theretofore been duly appointed.

I. Jackson is a county having more than one hundred thousand and less than three hundred and fifty thousand inhabitants. In such counties the law provides that the judge of each division of the circuit court shall appoint an official stenographer who shall be a sworn officer of the court, and shall hold his office during the term of the judge appointing him, "provided, however, that the judge shall, at any time, have power to remove such stenographer upon proper charges, entered of record, for incompetency or any misconduct in office, specifying such misconduct, and giving such stenographer an opportunity of being heard;" that it shall be the duty of such stenographer to attend the sessions of the court, and under the directions of the judge to take full stenographic notes of the oral

evidence, etc. And further provides that such official stenographer "shall receive as *per diem* compensation the sum of ten dollars for each and every day in attendance upon the court for which he is appointed," and "may appoint one or more deputies to assist him in the discharge of his duties, but shall not be allowed any additional compensation on account of such deputies." Revised Statutes, 1889, ch. 153, art. 2.

The constitution of 1875 provides: "That no person elected or appointed to any office or employment of trust or profit under the laws of this state * * * shall hold such office without personally devoting his time to the performance of the duties to the same belonging." Art. 2, sec. 18.

We have been favored with the citation of numerous authorities, and elaborate and learned arguments *pro* and *con* upon several propositions, which we do not think it either necessary or profitable to determine in this case. In the light of the foregoing provision in the fundamental law of the state, it is immaterial whether the duties of stenographer of the circuit court of Buchanan county are so incompatible with those of the stenographer of division number 2 of the circuit court of Jackson county as that the acceptance of the former position by the relator would, at common law, have been held to have been such an abandonment of the latter as that the same became *ipso facto* vacant or not. The grave abuses that could, and did creep into the public service under that law, by which the honors and emoluments of an office could be accepted by one person and the performance of its duties "farmed out" to another, for convenience or profit, furnished a cogent and sufficient reason for this constitutional enactment. The wholesome doctrine that "public office is a public trust" was fortified by its provision, declaring it also *a personal trust*, and that no

person should thereafter hold office in this state who did not *personally devote his time* to the performance of his official duties.   That he may have deputies, who, under his supervision and control, may assist him in the performance of his official functions, does not dispense with, nor in any way lessen his obligation to personally devote *his time* to their performance.   That this wise and salutary provision of the constitution may be enforced through the provisions of the statute under consideration as to this particular class of officers, we have no doubt.

When the constitution of 1875 was adopted, and when, in pursuance of this provision thereof, the general statute of 1877 was enacted, providing for the removal of all officers, except those subject to impeachment, for failure to personally devote their time to the performance of their official duties (Revised Statutes, 1889, secs. 7127, 7128), the exigencies of legal administration had not yet so imperatively demanded the services of an official stenographer as to have led to the creation of that office for courts outside of St. Louis.   In a short time, however, this exigency became apparent in counties having a very large population, and an act approved April 2, 1883, was passed, creating such an office in counties having a population of more than forty-five thousand and less than fifty thousand inhabitants and in the revision of 1889 the circuit courts were divided into four classes, according to population, and provision made in separate articles of the same chapter for the appointment and removal of official stenographers in all the circuit courts of the state.   Revised Statutes, 1889, ch. 153, *supra*.

As before stated the relator when removed was holding his office under the provisions of the second article of that chapter.   That law plainly providing for his removal from office "for incompetency or any mis-

conduct in office'' is applicable to all official stenographers of courts of the same class in the state, and may well stand with the law providing generally for the removal of all officers of the state not subject to impeachment for failure to personally discharge their official duties, since each law may find legitimate subjects for its application, and the provisions of this statute may be regarded as providing nothing more than a cumulative remedy for this particular class of officers. *Manker v. Faulhaber*, 94 Mo. 430.

The phrase ''misconduct in office'' is broad enough to embrace any wilful malfeasance, misfeasance or nonfeasance in office, and it cannot be doubted that an official stenographer who wilfully sets at naught this constitutional prohibition by refusing to personally devote his time to the performance of his official duties, whatever his reason therefor may be, is guilty of misconduct in office, within the meaning of the statute, and may be removed from office by the judge of the court of which he is such an officer.

The question remains on this record, was he removed in accordance with its requirements? The charge entered upon the records of division number 2 of the circuit court of Jackson county by the respondent judge of said court on the fourth of May, 1891, was, in substance, that the said Tilley, official stenographer of said court, ''is not in attendance upon the sessions of said court, nor performing the duties of said office, * * * but is devoting his time and services to the position of official stenographer of the circuit court of Buchanan county.'' A copy of which charge and of the citation contained in said order, that he be and appear before said court ''on the eleventh day of May, 1891, to perform his duties as such official stenographer, and in default thereof such proper orders will be made,'' etc., was personally served upon the

relator on the eighth of May, 1891, to which charges, on the eleventh of May, 1891, the relator made and filed his answer as follows:

"Now comes T. J. Tilley by his attorney and for his answer to the order and citation herein would respectfully answer and say that he admits it to be true that he now is, and for several years last past has been, the official stenographer of said court, and that he now is, and for some three years has been, the official stenographer of the circuit court of Buchanan county, Missouri; that during all that time M. E. Jones, Esq., has been his regularly appointed deputy for said division number two, and in his absence has discharged the duties of the office; that said Jones has not resigned his said position as deputy, nor has he been removed therefrom; that your respondent has hitherto been present in said court during all of its sessions by himself or said deputy, ready and willing to discharge all and singular the duties of official stenographer of said court; that it became and was necessary that respondent should be in attendance on the said Buchanan circuit court at its May term which was begun and held at St. Joseph, Missouri, on the fourth day of May, 1891, and that respondent requested that said Jones should be present on said day in said division number two of said Jackson county circuit court, and as his deputy discharge the duties of the official stenographer of said court, and respondent is informed and believes that said Jones was present and discharged said duties during the session of said court until the adjournment on Saturday, May 9, 1891; that, to further provide for the discharge of the duties of said position, respondent has appointed Mr. John M. Orr as an additional deputy and hereby offers and tenders the services of said Orr as such deputy stenographer. For a further answer herein respondent submits that said offices so

held by him are not incompatible in contemplation of law, and that he cannot be required to discharge the duties of official stenographer of said division number two in person, but that he is permitted and authorized by law to discharge the said duties of said position by deputy.

"Respondent is unable to be present in court in person in response to said citation and respectfully submits the foregoing to the consideration of the court.

"T. J. TILLEY."·

The relator in his answer admits that he is not in attendance upon the sessions of said court, and is not personally devoting his time to the performance of the duties of his office as official stenographer of said court, nor does he intend to, but offers and claims the right to perform those duties exclusively by deputy and without personally devoting his time to their performance. Thereupon the respondent judge of said court, in the exercise of the power conferred upon him by the statute, removed relator from his said office and appointed a successor, and caused an order substantially to that effect to be entered on the records of said court. And, it appearing from the record brought here that the exercise of this power by the respondent was had in conformity with the requirements of the statute, his action in the premises ought to be affirmed.

II. The point is made in the brief of counsel for respondent that *certiorari* is not the proper remedy, but, in view of the conclusion we have reached and the fact that there is pending in this court a *mandamus* proceeding involving the same questions, and the two were argued and submitted together, it is not important that this point should be expressly ruled. It is, perhaps, proper to say, however, that the proceedings brought up for review by the writ are judicial in their nature by a special tribunal created by the statute proceeding

to determine an issue in a summary manner, and not in the course of the common law, from which no appeal is provided for by statute, and *certiorari* would seem to be the proper remedy.

It is, therefore, ordered that the act of the respondent in removing the relator from the office of official stenographer of division number two of the circuit court of Jackson county on the eleventh day of May, 1891, be affirmed.   All concur.

---

THE STATE *ex rel.* TILLEY v. SLOVER, Judge.