COOK v. PAYNE, County Treas.

No. 31285. April 25, 1944.

*148 P. 2d 174.*

Wm. L. Cheatham and Lloyd L. Smith, both of Bristow, for plaintiff in error.

G. B. Coryell, Co. Atty., of Bristow, for defendant in error.

BAYLESS, J. On the 29th day of August, 1941, I. L. Cook, hereinafter referred to as plaintiff, commenced his action in mandamus against H. L. Payne, county treasurer, as defendant, to obtain an allowance of a claim for $6,025.75, balance due for fees for the publishing of a delinquent tax list of Creek county. The alternative writ was issued and the return thereto was filed September 22, 1941. On the 18th day of June, 1942, on a trial of the cause before the court special findings of fact and conclusions of law were made by the trial court and judgment was entered dissolving the alternative writ theretofore entered and dismissing the application for the permanent writ. Plaintiff appeals to review this order and in five allegations of error presents four general propositions, all of which deal with the alleged error of the trial court in refusing the mandatory writ.

The allegations of the petition were, and the facts substantially disclose, that the plaintiff is the owner and publisher of the Creek County Democrat, a newspaper published in Creek county, Okla.; that on the 24th day of February, 1940, the defendant, as county treasurer, delivered to the plaintiff for publishing a list of city lots and tracts of land to be advertised for resale in said newspaper under the provisions of article 31, ch. 66, S. L. 1939; that pursuant to said delivery the plaintiff published the resale tax notice as requested and as provided

by law, and that the statutory charges therefor as provided in the above act amounted to the sum of $7,489.05, on which there was paid as partial payment out of the resale property fund as provided by the said above article 31, ch. 66, the sum of $1,463.30, leaving a balance due of $6,025.75.

The defendant at the time of the trial established that on the 19th day of February, 1940, the plaintiff entered into a written contract with the board of county commissioners of Creek county, Okla., by which contract the plaintiff agreed to publish the resale tax notice for less than the fee set out in the act of 1939, above referred to, and further established that the sum of $1,463.30 was paid to the plaintiff in what is alleged to be a full and complete satisfaction for said printing and in satisfaction of the contract of February 19, 1940.

In the five allegations of error and the four propositions presented, the plaintiff takes the position that the contract of the 19th day of February, 1940, was void; that under section 4, art. 31, ch. 66, S. L. 1939, there is established a mandatory set of fees, and that there is no power either in the county treasurer or board of county commissioners to change the fees established, by contract. It is the apparent holding of the trial court that the plaintiff was bound by the contract of February 19, 1940.

We are of the opinion that the trial court correctly held that the contract was binding on plaintiff, and in refusing to issue its writ requiring the payment of more money than the contract provided.

Section 4, art. 31, ch. 66, S. L. 1939, provides, in part: "For publication costs on resale of real estate, the county treasurer shall charge and collect from the purchaser at such sale, and the publisher shall be paid, as full compensation . . . the following amounts:" and then followed a schedule of fees each stating a maximum for each class, which was followed by this language: "The county shall not be liable for, and its officers are prohibited from paying or agreeing

to pay more than . . ." the maximums stated before.

It is plaintiff's position that the fees specified are by mandate of law a part of any contract entered into for the publication of resale lists, and the county officials are without power to contract for such publications at a greater or lesser price. In support of this argument plaintiff cites the duties imposed (1) to charge and collect from the owner the fees specified, and (2) "the publisher shall be paid . . . the following amounts:" and cites Young v. Town of Morris, 47 Okla. 743, 150 P. 684, and Board County Com'rs, Caddo, v. Lawrence, 182 Okla. 485, 78 P. 2d 669.

The decisions cited deal with the compensation for public offices, and generally involve issues of law and other considerations that render them inapplicable here.

The argument relating to the mandatory effect of the language of the statute presents a more difficult problem.

We agree with plaintiff that the schedule of fees sets a maximum charge that the publisher can make against the county and because thereof there is no legal basis for charging or paying more. We likewise agree that the money collected from purchasers goes into the special fund to be used in paying the publication costs, and to that extent the publisher has first call upon the fund. However, we are unable to agree that this results in an exclusive interest or trust in favor of the publisher that supports the argument that the statute fixes the schedule of fees in all contracts to publish tax resale lists. Other considerations which we will allude to lead us to say this.

The money used to pay for such publication may come from an appropriation for that purpose. Section 2 of the act plainly authorized the payment of the charges from an appropriation, but also authorizes the holding of resales where an appropriation is not made or is made in an amount insufficient to pay, in which instances the cost shall be paid "from the Resale-Property-Fund, hereinafter provided." Also, where there has not previously been such a Resale-Property-Fund, or where it is exhausted, and all of the property offered at resale is purchased by the county, and the county has made no appropriation or an insufficient appropriation, there would be no money paid into the fund, or an insufficient amount. In such a case, it may be assumed that the unpaid claim for publication costs would pend until money was paid into the fund, but such contingencies are clearly destructive of plaintiff's contention that by this statutory method a fund is created that so patently belongs to the publisher that no legal contract for less can be made.

The act is rather comprehensive, and includes provisions for the continuance of the fund as a revolving fund free of the ordinary budgetory laws and provisions for the distribution of the surplus, if any. The discretion to distribute a supposed surplus might result in the depletion of the fund. These considerations add weight against plaintiff's contention that this fund (to the extent necessary to pay his claim mandatorily calculated on the statutory schedule of fees) exists as an exclusive trust for his benefit to the extent claimed. If his contention in this respect were true, he would have a cause of action against the county or its officers for the distribution of the supposed surplus that resulted in depleting the fund, and in an instance such as this there would be gross injustice.

We are, therefore, of the opinion that while the schedule of fees is the maximum that can be charged and paid, we cannot find anything in the act that implies the lack of power for the county officers and publishers to contract to do the job for less.

Plaintiff does not cite us any authority for his contention, and we have not found any. We are of the opinion that common business judgment dictates that county officials save money for the county on all occasions, and that ceilings put on public expenditures ought not to be construed to be floors also. "Re-

strictions on power to contract are designed to protect the public rather than those who contract with the municipality." McQuillin, Mun. Corps. (2nd Ed.) vol. 3, § 1269, p. 1101, citing City of Weston v. Bank (Mo. App.) 192 S. W. 126, under note 39.

The judgment appealed from is affirmed.

CORN, C.J., GIBSON, V.C.J., and OSBORN, HURST, DAVISON, and ARNOLD, JJ., concur.